**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **REDA & DES JARDINS, LLC,** | ) | |
| | ) | **No. 26 CV 1125** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **EVAN M. SAUER and INSIDE OUT LEGAL, LLC,** | ) | |
| | ) | |
| | ) | **October 2, 2026** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Reda & Des Jardins, LLC ("R&D") sues Defendants Evan Sauer and Inside Out Legal, LLC ("Inside Out") for allegedly: (1) using its "SHOPLOCK" mark without consent in violation of the Lanham Act, 15 U.S.C. § 1114 (Count I); (2) breaching fiduciary duties through conversion of business opportunities, abandonment of trademark applications, and theft of real estate title agent fees (Counts II, III, and V); and (3) tortiously interfering with contracts (Count IV). Before the court is Sauer's motion to dismiss Count I of the amended complaint under Federal Rule of Civil Procedure 12(b)(6).[1] Inside Out answered the amended complaint, (see R. 30, Ans.), and does not join Sauer in the current motion. For the following reasons, the motion is denied:

---

[1] Although Sauer styles the motion as a "Motion to Dismiss Amended Complaint," his arguments pertain only to Count I under the Lanham Act. (See generally R. 31, Def.'s Mot.) As such, the court does not address Counts II through V of the amended complaint.

## Background

As explained in the opinion and order dismissing the original complaint without prejudice, (see R. 26, July 7, 2026 Mem. Op. & Order at 1-2), the court accepts as true all well-pleaded, relevant facts in the amended complaint and draws all reasonable inferences in R&D's favor, *see Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016). R&D is a law firm based in Lake Forest, Illinois, with attorney Robert Reda serving both as a managing member and its attorney of record in this case. (R. 27, Am. Compl. ¶¶ 2, 6.) Sauer is an attorney who served as the other managing member of R&D until he resigned effective January 31, 2024. (Id. ¶¶ 8, 12, 14 & Ex. 1 at 1-3.) Thereafter, Sauer began working for Inside Out, a law firm based in St. Charles, Illinois. (See id. ¶¶ 35, 51-52 & Ex. 21 at 2.)

During his tenure at R&D, Sauer was "responsible for R&D's . . . Business and Real Estate Practices, as well as its Marketing Programs, Social Media Programs, and Client Resource Management Software and Database 'Lawmatics.'" (Id. ¶ 8.) As part of its Marketing Program, R&D started a "Brand Protection for Ecomm Sellers" Facebook group in March 2019. (Id. ¶ 21 (operating at http://www.facebook.com/groups/brandprotectionecommlawyer).) In July 2021 the firm subscribed to the online platform Lawmatics to manage client resources. (Id. ¶¶ 22-25 & Ex. 23.) And the following year, R&D hosted an Instagram page to market its ecommerce services. (Id. ¶ 30 (see https://instagram.com/evansauerlegal/).) R&D invested more than $50,000 in its Marketing and Social Media Programs. (Id. ¶ 34.)

In January 2022 Sauer submitted a trademark application to the United States Patent and Trademark Office ("USPTO") on behalf of R&D, for registration of the mark "SHOPLOCK." (Id. ¶ 26.) In April 2023 the USPTO granted R&D's application for the "SHOPLOCK" mark in international classes 41 and 45. (Id. ¶ 28 & Ex. 4.) R&D then began integrating the "SHOPLOCK" mark into its Marketing and Social Media Programs, including by creating Ecommerce Business Instagram and Facebook groups, (id. ¶ 30 & Exs. 5-6 (operating at instagram.com/ evansauerlegal and facebook.com/groups/brandprotectionecomm lawyer), and promoting the mark through SHOPLOCK-branded workshops in these groups and through the SHOPLOCK YouTube Channel in 2023 and early 2024, (id. ¶¶ 31-32 & Exs. 7-10). R&D used the "SHOPLOCK" mark to attract new clients and generate business for its ecommerce practice. (See id. ¶¶ 33-34.)

R&D alleges that Sauer is misusing the "SHOPLOCK" mark by "assum[ing] exclusive control of R&D's Facebook and Instagram Social Media and Groups, R&D's YouTube Channel, and all the Videos published on and within the YouTube Channel," including "SHOPLOCK YouTube Videos." (Id. ¶¶ 47-48.) R&D says Sauer began doing so after his January 31, 2024 resignation from R&D and continues "to publish the SHOPLOCK Videos on the usurped YouTube Channel, which included the R&D SHOPLOCK Trademark." (Id. ¶ 49 & Ex. 25.) However, as early as February 2, 2024, Sauer "changed the names of various R&D Social Media Groups" in an effort "to conceal his illegal assumption of" such groups, according to R&D. (Id. ¶ 50 & Exs. 19-20.) For instance, R&D says Sauer changed the Facebook group name from

"Shoplock Legal Strategies to Grow Your Online Biz & Avoid Lawsuits" to "Legal Strategies to Grow Your Online Biz & Avoid Lawsuits." (Id.)

R&D contends that Sauer was "not publishing Videos with a Shoplock Mark *similar to* R&D's SHOPLOCK Trademark, from February 1, 2024, through at least July 3, 2025," but rather "was continually publishing R&D YouTube Videos specifically using R&D's SHOPLOCK Trademark, without R&D's consent, to promote his ecommerce legal services to potential clients." (Id. ¶ 51 (emphasis added) & Ex. 25.) In other words, R&D alleges that after his resignation, Sauer was "promoting and marketing" the same videos bearing the "SHOPLOCK" mark that he published on the YouTube Channel he operated while serving as a managing member of R&D. (Id. ¶ 52.)

In support of its allegations, R&D attaches to its amended complaint an exhibit that appears to be a screenshot of Sauer's YouTube Channel with the title "Legal Strategies to Grow Your Online Business & Avoid Lawsuits" ("YouTube Exhibit"). (Id. ¶¶ 51-52 & Ex. 25.) The YouTube Exhibit appears to show short videos being offered, using the "SHOPLOCK" mark, in connection with various business concepts, such as creating goodwill to add value and "[c]hoosing the right legal entity" for an ecommerce platform. (Id.) R&D says its ecommerce clients have no way of knowing that this marketing is no longer associated with its firm. (Id. ¶ 54.)

## Analysis

Sauer moves to dismiss Count I of the amended complaint for "Trademark Use Without Consent" under Rule 12(b)(6) for failure to state a claim. (See R. 31, Def.'s

Mot.) The Lanham Act imposes liability for trademark infringement when a defendant "'use[s] in commerce,' without consent, 'any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services," and "such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Davis v. Entities Listed on Ex. 1*, No. 23 CV 10799, 2026 WL 893345, at *5 (N.D. Ill. March 31, 2026) (citing 15 U.S.C. § 1114(1)(a)). The plaintiff must also show that "its mark is protectable." *Phoenix Ent. Partners, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (internal citation and quotation omitted). "Whether consumers are likely to be confused about the origin of an alleged infringer's products or services is a question of fact" that hinges on an analysis of multiple factors, "none of which is dispositive." *Grubhub, Inc. v. Relish Labs LLC*, 80 F.4th 835, 845, 847 (7th Cir. 2023).

Sauer argues that the Lanham Act claim in the amended complaint suffers the same defects as the original complaint because R&D fails to allege that it owns and exclusively controls the "SHOPLOCK" mark, Sauer used the mark in commerce without consent, and consumers were likely to be confused about the origin of Sauer's services. (See generally R. 31, Def.'s Mot.; see also R. 26, July 7, 2025 Mem. Op. & Order at 5-8.) R&D counters that the amended complaint cures the defects noted in the court's prior ruling "and more." (R. 36, Pl.'s Resp. at 1 (citing R. 26, July 7, 2026 Mem. Op. & Order at 8).) The court finds the trademark infringement allegations in the amended complaint sufficient to survive dismissal.

### A. Ownership

Sauer asserts in his motion that the amended complaint does not allege "ownership of the subject mark." (R. 31, Def.'s Mot. at 1.) The court disagrees. Indeed, R&D alleges that it received a trademark registration from the USPTO for the "SHOPLOCK" mark (Registration No. 7,020,651) in international classes 41 (educational services) and 45 (legal advice) and that the mark belongs solely to R&D and has not been "authorized or licensed [to Sauer] or any other party to use . . . in commerce or in any other manner." (R. 27, Am. Compl. ¶¶ 28-29 & Ex. 4.) The Supreme Court has emphasized that a federal trademark registration "is prima facie evidence of the validity of the registered mark[,] of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) (internal citation and quotation omitted). Although the application for the "SHOPLOCK" mark lists Sauer as the "Attorney of Record" who prosecuted the application, (R. 27, Am. Compl., Ex. 24 at 3), R&D is listed as the owner of the mark on both the registration and application, (id., Exs. 4 at 1, 24 at 1). As such, R&D sufficiently pleaded ownership and exclusive control of a protectable mark. (See id.); *see also Phoenix*, 829 F.3d at 822.

### B. Use Without Consent

Sauer next contends that R&D fails to allege he used the "SHOPLOCK" mark in commerce in any way, let alone "without R&D's permission," after his resignation. (R. 31, Def.'s Mot. at 1-2, 4-5; see also R. 38, Def.'s Reply at 1 (arguing that "[t]he

pleading defect was, and remains, use").) But again, Sauer's assertion is belied by the allegations in the amended complaint. To be sure, R&D asserts that Sauer did not have permission to use the "SHOPLOCK" mark after he resigned from the law firm on January 31, 2024. (R. 27, Am. Compl. ¶¶ 29, 46-49, 54, 56.) Despite a lack of consent to use the mark after his resignation, Sauer "assumed exclusive control of R&D's Facebook and Instagram Social Media and Groups, R&D's YouTube Channel, and all the Videos published on and within the YouTube Channel" so that he could continue publishing videos bearing the "SHOPLOCK" mark, according to the amended complaint. (Id. ¶¶ 47-49 & Ex. 25.) And even after he "changed the names of various R&D Social Media Groups" in an effort "to conceal his illegal assumption of" such Groups, Sauer still "promot[ed] and market[ed]" videos bearing the "SHOPLOCK" mark through his own YouTube Channel from February 1, 2024, through July 3, 2025. (Id. ¶¶ 50-52.) For support R&D points to the YouTube Exhibit, which as explained is a screenshot allegedly showing Sauer's "Legal Strategies to Grow Your Online Business & Avoid Lawsuits" YouTube Channel—with videos offered using the "SHOPLOCK" mark in connection with his ecommerce legal services. (Id. ¶¶ 51-52 & Ex. 25.) The metadata shown in that screenshot suggests the image was taken on July 3, 2025. (Id., Ex. 25.) Taken together, these allegations are sufficient to withstand dismissal on the element of use without consent.

Sauer argues that the YouTube Exhibit neither establishes "use by Sauer" of the "SHOPLOCK" mark nor "an unauthorized use[] after his January 31, 2024, resignation from R&D." (R. 31, Def.'s Mot. at 4.) He contends in the motion that the

exhibit "does not refer to the SHOPLOCK mark or imply any association with R&D," (id.), but concedes in his reply—solely "[f]or purposes of this [m]otion"—that "the SHOPLOCK mark appears in some fashion" in the YouTube Exhibit, (id. at 2 n.1 (explaining that Sauer's attorney "did not initially notice" the "SHOPLOCK" mark in the YouTube Exhibit because it was, in his view, "at best, barely visible")). In fact, the word "SHOPLOCK" appears to be placed above Sauer's picture in each of the six videos visible on the YouTube Exhibit and apparently offered for viewing on his YouTube Channel after January 31, 2024. (R. 27, Am. Compl., Ex. 25.)

Despite Sauer's concession that the "SHOPLOCK" mark appears in the YouTube Exhibit, he tries to prove the merits of his defenses in his reply brief. (See R. 38, Def.'s Reply at 2-5). Sauer argues, for example, that the exhibits to the amended complaint show no post-resignation use of the "SHOPLOCK" mark and undercut R&D's allegations regarding the YouTube Exhibit. (See id. at 3-5.) But Sauer filed this Rule 12(b)(6) motion testing the plausibility of R&D's allegations. (See generally R. 31, Def.'s Mot.) Whether a genuine factual dispute exists will be determined later once the record is developed. At this stage, "[r]equiring rigorous evidentiary requirements would be inconsistent with" Rule 12(b)(6), which requires only "'a short and plain statement showing that the pleader is entitled to relief.'" *Joshi v. Joshi*, No. 18 CV 5426, 2019 WL 3554388, at *5 (N.D. Ill. Aug. 1, 2019) (citing Fed. R. Civ. P. 8(a)(2)).

### C. Confusion

Finally, Sauer asserts that R&D failed to "plausibly allege that any . . . likelihood of confusion factors are at play here." (R. 31, Def.'s Mot. at 7.) He says the amended complaint nowhere alleges that a consumer "would be confused about the source of the services [he] offered" or "draw a plausible connection to R&D, let alone the SHOPLOCK mark." (Id.) But Sauer does not develop his argument. (Id.) Regardless, R&D alleges that from February 1, 2024, through at least July 3, 2025, Sauer was "promoting and marketing" videos bearing the "SHOPLOCK" mark identical to the videos he hosted on his YouTube Channel when he was an R&D managing member. (R. 27, Am. Compl. ¶ 52.) The court has "'broad' flexibility to determine what [likelihood-of-confusion] factors are most critical in a case," with "similarity of the marks [being] one of the most important considerations." *Ill. Tamale Co., Inc. v. LC Trademarks, Inc.*, 164 F.4th 648, 662 (7th Cir. 2026) (citation omitted). Here, R&D is not asserting that Sauer is using a "similar" mark but rather the very mark R&D registered in 2023—the "SHOPLOCK" mark. (R. 36, Pl.'s Resp. at 9-10.)

Drawing all reasonable inferences in R&D's favor, *see Lewert*, 819 F.3d at 966, R&D sufficiently pleaded that its ecommerce clients likely either had "no idea or indication that it [wa]s not R&D continuing with said marketing," (R. 27, Am. Compl. ¶ 54), or perhaps thought that R&D's and Sauer's "SHOPLOCK"-related legal services were "shar[ing] a common source," *Naked Juice Co. v. Naked Whey, Inc.*, No. 26 CV 3740, 2026 WL 2475471, at *2 (N.D. Ill. Aug. 24, 2026). The "likelihood of

confusion test is fact-intensive and generally not amenable for resolution before discovery." *Naked Juice Co.*, 2026 WL 2475471, at *3. The court finds that R&D has satisfied the notice-pleading standard here.

**Conclusion**

For the foregoing reasons, Sauer's motion to dismiss Count I is denied.

**ENTER:**

**Young B. Kim**